UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SARAH MARIE SHARP ALFORD, ET AL.** | **CIV. ACTION NO. 3:21-0580** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JEFFERY DYKE, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

<u>**REPORT AND RECOMMENDATION**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: 1) a motion to dismiss for lack of subject matter jurisdiction, and/or for sufficient service of process [doc. # 3] filed by Defendant, State of Louisiana, through the Department of Transportation and Development ("DOTD"); and 2) a motion to remand and associated request for costs and fees [doc. # 11] filed by Plaintiffs, Sarah Marie Sharp Alford, et al. The motions are opposed. For reasons explained below, it is recommended that, 1) the State's motion to dismiss be DENIED; and 2) that Plaintiffs' motion to remand be GRANTED, but that the request for costs and fees be DENIED.

<u>Background</u>

On October 30, 2020, Winston Chance Alford ("Alford") was behind the wheel of a borrowed 2011 Mazda 3S when he collided head-on with an 18-wheel refrigerated tractor trailer driven by Jeffery Dykes on Louisiana Highway 33, at Farmerville, Louisiana. At the time of the collision, the 18-wheeler was speeding (traveling 47.5 miles per hour in a 35-mile per hour zone). Immediately before the accident, Alford observed the 18-wheeler cross over the center line and he attempted to take evasive action. (Petition, ¶ 12). Despite Alford's efforts, the vehicles collided head-on, with both straddling the center line of the highway at the point of impact. *Id.* Alford's resulting injuries proved fatal. (Petition, ¶ 4).

On January 29, 2021, Sarah Marie Sharp Alford filed the instant petition for damages,

individually, and as natural tutrix on behalf of three of Alford's minor children, in the Third Judicial District Court for the Parish of Union, State of Louisiana, against Defendants Jeffery Dyke; Dyke's employer(s) -- Highway Express and Gurpinder Singh Sanghera (incorrectly sued as "Gurpinder Singh Sangher"); Northland Insurance Company (the liability carrier for the foregoing Defendants); Tryus Transportation, Inc. (the owner of the refrigerated trailer driven by Alford); and the State of Louisiana through its Department of Transportation & Development ("DOTD" or the "State"). (Petition). Additional Plaintiffs include Jill Nations, as natural tutrix of Alford's two other minor children; Zach Alford and Tyler Alford (Alford's brothers); and Sue Alford (Alford's mother and owner of the Mazda that he was driving at the time of the collision). *Id*. Plaintiffs seek compensatory and punitive damages suffered by them and/or the decedent as a result of Defendants' negligence. *Id*.

On March 5, 2021, Defendants, Dyke; Highway Express; Sanghera; Try-Us Transportation, Inc.; and Northland Insurance Company, removed this matter to federal court on the exclusive basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). Plaintiffs are all Louisiana domiciliaries. (Petition, ¶ 1). Individual Defendants, Dyke and Sanghera, are California domiciliaries. (Notice of Removal, ¶¶ 7 & 9). Defendant, Northland Insurance Company, is a Minnesota corporation, with its principal place of business in said state. *Id*., ¶ 11. Defendants further contend that Defendants, Try-Us Transportation, Inc. and Highway Express are foreign entities. *Id*., ¶¶ 8, 10.[1]

The DOTD's presence in this matter, however, precludes the exercise of diversity jurisdiction. *See* discussion, *infra*. To overcome the obstacle to diversity jurisdiction posed by the DOTD, removing Defendants asserted in the notice of removal that Plaintiffs have no reasonable possibility of recovery against the DOTD, and, therefore, it was improperly joined in

---

[1] The citizenship of these parties is discussed in greater detail below.

2

an attempt to defeat subject matter and removal jurisdiction. *See* Notice of Removal.

On March 9, 2021, the DOTD filed the instant motion to dismiss for lack of subject matter jurisdiction on the basis that it was an arm of the State of Louisiana and entitled to sovereign immunity under the Eleventh Amendment. The DOTD further argued that service of process was insufficient because Plaintiffs only requested service on the attorney general, without also requesting service on the head of the DOTD and the office of risk management, as required by state law.

On March 25, 2021, Plaintiffs filed the instant motion to remand the matter to state court on the basis that their claims against the DOTD precluded the exercise of federal subject matter jurisdiction, via diversity. Plaintiffs further requested over $17,000 in fees and costs that they incurred as a result of Defendants' improper removal.

That same day, Plaintiffs filed their opposition to the DOTD's motion to dismiss wherein they argued that the State's sovereign immunity argument was misplaced because Plaintiffs had sued the State of Louisiana in state court where the State unequivocally has waived its sovereign immunity for tort claims. (Pls. Opp. Memo. [doc. # 9]) (citing LA. CONST. ART. XII, §10(A)). Plaintiffs further took issue with the DOTD's attack on the sufficiency of Plaintiffs' service efforts. *Id*. Finally, Plaintiffs argued that the State colluded with the removing Defendants to "unjustly" deprive Plaintiffs of their chosen forum, and, thus, Plaintiffs were entitled to an award of attorney's fees and costs against the State in the sum of $3,375.00. *Id*.

The State filed a reply brief in support of its motion to dismiss on April 7, 2021. [doc. # 15]. Removing Defendants filed a memorandum in opposition to Plaintiffs' motion to remand on April 15, 2021. [doc. # 16]. Plaintiffs did not file a reply brief in support of remand, and the time to do so has lapsed. *See* Notice of Motion Setting. [doc. # 14]. Accordingly, the matter is ripe.

**Discussion**

**I. Motion to Remand**

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. ' 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id.* Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). The removal statutes are strictly construed in favor of remand. *Manguno, supra*.

Removing Defendants invoked this court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000, and complete diversity of citizenship between plaintiffs and defendants, 28 U.S.C. § 1332(a). Here, Plaintiffs seek damages stemming from the death of Christopher Alford, which by the very nature of the claim, suffices to satisfy the amount in controversy requirement. *See* Notice of Removal ¶ 22 (citing survival/wrongful death cases with damages awards in excess of $75,000). Accordingly, the sole jurisdictional issue is whether the parties are citizens of diverse states.

The diversity jurisdiction statute presupposes a civil action between "citizens of different states," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). When jurisdiction depends on citizenship, "citizenship must be '*distinctly* and *affirmatively* alleged.'" *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254 (5th Cir. 1988) (citation omitted) (emphasis in citing source); *see also Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th

Cir.1983) (the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference). This rule requires "strict adherence." *Getty Oil, supra*.

As stated earlier, Plaintiffs are Louisiana citizens; the individual defendants are California citizens; and Defendant, Northland Insurance Company, is a citizen of Minnesota. (Notice of Removal). Removing Defendants further alleged that Defendant, Try-Us Transportation, Inc. was a "foreign corporation," with its principal place of business in California. (Notice of Removal, ¶ 10). However, the notice of removal failed to affirmatively allege Try-Us Transportation, Inc.'s state of incorporation.[2]

In addition, the notice alleged that Defendant, Highway Express, was a "foreign entity," with its principal places of business in California. *Id.*, ¶ 8. However, removing Defendants did not specify whether Highway Express was a corporation or some other form of unincorporated association. If Highway Express is a corporation, then removing Defendants should have so stated and alleged its state of incorporation. If Highway Express is an unincorporated association or a limited liability company, then removing Defendants were required to identify the members of Highway Express and their citizenship.[3]

---

[2] In diversity cases involving corporations, "allegations of citizenship must set forth the **state of incorporation** as well as the **principal place of business** of each corporation." *Getty Oil, supra*; *see also Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n. 2 (5th Cir. 1983) (emphasis added) (the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference); *McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) (alleging that defendant is incorporated in a state "other than" that of plaintiff is insufficient). Moreover, simply alleging that a corporation is a "foreign insurer" without specifying its principal place of business is insufficient for jurisdictional purposes. *See Getty, supra*.

[3] The citizenship of a limited liability company ("LLC") or an unincorporated association is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Moreover, for each member of an LLC that is itself an LLC or partnership, its members and their citizenship must be identified and traced up the chain of

If the foregoing represented the only issues with the court's exercise of subject matter jurisdiction, then the undersigned could have afforded Defendants an opportunity to amend their notice of removal to redress these deficient allegations. However, a more immutable roadblock to the maintenance of this diversity suit in federal court is the presence of Defendant, DOTD.

It is well-established that a state is not a citizen for purposes of diversity jurisdiction, and thus, a court may not exercise diversity jurisdiction in a case where a state is a party. *Tex. Dep't. of Hous. & Cmty. Affairs v. Verex Assur., Inc.,* 68 F.3d 922, 926 (5th Cir. 1995), *overruled on other grounds by Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 413 n.19 (5th Cir. 2009); *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (and cases cited therein). "Likewise, state agencies that are the alter ego of the state are not citizens for the purposes of diversity jurisdiction." *Tex. Dep't. of Hous. & Cmty. Affairs, supra; see also Tradigrain, Inc., supra; Firefighters' Ret. Sys. v. Consulting Grp. Servs., LLC*, 541 B.R. 337, 350 (M.D. La. 2015). The DOTD is an arm of the State of Louisiana, and, consequently, is not a citizen for purposes of diversity jurisdiction. *Watkins v. Louisiana Dep't of Transp. & Dev.*, Civ Action No. 09-1743, 2010 WL 744911, at *2 (W.D. La. Feb. 26, 2010).

To overcome the patent obstacle to diversity jurisdiction caused by the DOTD's presence in the suit, removing Defendants contend that Plaintiffs have no reasonable possibility of recovery against the DOTD, and Plaintiffs improperly joined the State in a transparent attempt to defeat diversity jurisdiction. It has been long established that an improperly joined or nominal defendant will not defeat subject matter or removal jurisdiction. *See Farias v. Bexar County Bd.*

---

ownership until one reaches only individuals and/or corporations. *Lewis v. Allied Bronze, LLC*, 2007 WL 1299251 (E.D. N.Y. May 2, 2007); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009) (suggesting that to discern the citizenship of an LLC, the court must trace citizenship "down the various organizational layers"); *Feaster v. Grey Wolf Drilling Co.*, 2007 WL 3146363, *1 (W.D. La. Oct. 25, 2007) ("citizenship must be traced through however many layers of members or partners there may be").

*of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871 (5th Cir. 1991); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005)). Indeed, "if the State is a nominal party with no real interest in the dispute, its citizenship [or, more accurately, lack thereof] may be disregarded." *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir.2006).

However, the improper joinder doctrine represents a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell,* 509 F.3d at 669. To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *McDonal,* 408 F.3d at 183 (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).

In the case *sub judice*, there are no allegations of actual fraud. Accordingly, the court must determine whether removing Defendants have demonstrated that Plaintiffs have "no possibility of recovery" against the diversity-destroying Defendant, *i.e.* that there is "no reasonable basis" for the district court to predict that Plaintiffs might recover against the entity. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the diversity-destroying defendant under state law (Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiffs have stated a claim, but have misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Id.* However, the "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff[s'] recovery against the

in-state defendant." *Id.*[4] at 373-74. In the process, the court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiffs. *Travis*, 326 F.3d at 649. Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendants fail to establish improper joinder, then diversity is not established, and remand is required. *Id.* The existence of even a single valid cause of action against a non-diverse/diversity-busting defendant requires remand of the entire case to state court. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted).

Utilizing this framework, the court first must review the allegations in the complaint to discern whether Plaintiffs alleged sufficient facts to state a claim for relief against the non-diverse/diversity-busting Defendant, i.e., the DOTD. *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018). In so doing, the court applies the Rule 12(b)(6) standard. *Id.*

"The DOTD owes a duty to travelers to keep the highways and their shoulders in a reasonably safe condition." *Graves v. Page*, 703 So.2d 566, 571 (La. 1997) (citation omitted). Furthermore,

> DOTD must maintain the shoulders and the area off the shoulders, within its right-of-way, in such a condition that they do not present an *unreasonable* risk of harm to motorists using the adjacent roadway and to others, such as pedestrians, who are using the area in a reasonably prudent manner. DOTD's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find himself on, or partially on, the shoulder. This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive.

*Netecke v. State ex rel. DOTD*, 747 So.2d 489, 495 (La. 1999) (internal citations omitted); *Cormier v. Comeaux*, 748 So.2d 1123, 1127 (La. 1999). Nevertheless, the DOTD is not the guarantor of motorist safety. *Id.* (citing *inter alia, Graves, supra*).

---

[4] In other words, facts that can be easily disproved if not true. *Id.*

To hold the DOTD liable in tort, Plaintiffs must establish that

> the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries.

*Cormier, supra; see also Graves, supra.*

Furthermore, line of sight obstruction claims are decided on a factual case-by-cases basis. *Graves, supra* (foliage in the ditch bank and highway right of way). Likewise, causation is a fact-specific inquiry. *Id*. (citation omitted). Ultimately, "[w]hether the DOTD breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on all the facts and circumstances determined on a case by case basis." *Netecke,* 747 So.2d at 495 (citation omitted).

In this case, Plaintiffs alleged that

> [t]he area of roadway where the collision occurred had signs and fuel canopy pylons also encroaching into the road right of way which obstructed views both ways on the roadway and created obstructions and removed paths of vehicular escape upon the roadway shoulders all of which contributed to the accident. DOTD was negligent in allowing such visual and physical obstructions to exist and knew or should have known through the exercise of reasonable care of these unreasonably dangerous conditions and thus bears some comparative fault for the accident.

(Petition, ¶ 17).

Removing Defendants did not argue that Plaintiffs' petition fails to state a claim for relief against the DOTD. Rather, they rely on extrinsic evidence to pierce the pleadings to demonstrate that Plaintiffs have no possibility of recovery against the DOTD. The court emphasizes that, for purposes of this inquiry, the "no-evidence" summary judgment standard is inapplicable, and, instead, removing Defendants bear the burden of putting forth evidence to *affirmatively* negate a possibility of recovery by the non-diverse/diversity-busting party. *Cumpian, supra* (citation

9

omitted).

To support their argument, Defendants submitted a copy of the accident report completed by Lamar Guillot of the City of Farmerville Police Department. (Uniform Motor Vehicle Traffic Crash Report; Defs. Opp. Memo., Exh. 1 [doc. # 16-1]). Guillot noted that there were no "vision obscurements" and that the highway was marked with a yellow, no passing line. *Id*. He indicated that the 18-wheeler was traveling 45 miles per hour in a posted 35 mile per hour zone. *Id*. Guillot drew a corrected drawing of the accident which showed Alford's vehicle leaving his northbound lane of travel at an unknown point and traveling in the oncoming, southbound lane of travel until the point of impact where the front, right corner of the Mazda was over the center yellow line, with the car angled towards the correct lane of travel, but at a greater angle than the curve in the road. *Id*. Guillot noted that the driver of the 18-wheeler did not appear to be under the influence, but a later blood test found some drugs in his system. *Id*. A subsequent autopsy of Alford uncovered a "large number of drugs in his system." *Id*.

Defendants also adduced an affidavit from Jerry Key, an accident reconstructionist, who observed that the roadway where the accident occurred, had a gentle curve that allowed approximately 200-300 feet of visibility. (Jerry Key Affidavit; Notice of Removal, Exh. 3 [doc. # 1-4]). Key remarked that he did not observe any visibility restrictions that would prevent a vehicle traveling in either direction from seeing oncoming traffic. *Id*.

In support of remand, Plaintiffs submitted an affidavit and attached photographs from an accident reconstructionist of their own, Matthew Jackson, who disputed Mr. Key's findings. (Matthew Jackson Affidavit; M/Remand, Memo., Exh. A [doc. # 12]). Jackson stated that "[c]oming into the collision area, the canopy supports and several signs would present visibility obstructions for drivers with respect to oncoming vehicles." *Id*. Furthermore, the obstructions would have been relevant to Alford and Dyke's "ability to appreciate each other up to

10

approximately four seconds prior to their impact." *Id*.

After reviewing pertinent survey plats, Jackson stated that the canopy and supports for the adjacent Spirit Zone gas station encroached 19 feet into the highway's right of way. *Id*. Also, the signs and a cabled fence, including fence posts, between the Spirit Zone and the Ol' Hickory Café encroached 19.5 feet into the right of way. *Id*. The Ol' Hickory Café building itself encroached 9.5 feet into the highway right of way. *Id*. Furthermore, the Ol' Hickory Café sign, drive through lane, and traffic queue were entirely within the right of way. *Id*.

Jackson noted that, at impact, both vehicles were partially out of their travel lanes. *Id*. Moreover, just prior to impact, Alford was returning to his northbound travel lane, after having moved across into the southbound travel lane for an unknown reason. *Id*. Jackson opined that Alford would have been able to return to his travel lane and avoided the impact if the 18-wheeler had been traveling no more than five miles per hour above the speed limit. *Id*.

In response to the motion to remand, Defendants submitted an affidavit from yet another accident reconstructionist, Benjamin Smith, who reviewed the available evidence and stated that he agreed with the findings of Jerry Key. (Benjamin Smith Affidavit; Defs. Opp. Memo., Exh. 3 [doc. # 16-3]). Smith added that "there were no observable visual obstructions within 300 feet of the area of impact that would impact or hinder a driver traveling in either direction." *Id*. He emphasized that the Spirit Zone canopy posed no visual obstruction to either driver. *Id*. Based on Smith's "research," he opined that glare from the Ol' Hickory Café drive-through was not an issue for northbound drivers. *Id*. Smith further stated that the collision occurred solely in the southbound lane, and, therefore, Alford was completely out of his original lane of travel at the time of the accident. *Id*.

Finally, Removing Defendants also provided the court with an affidavit from the 18-wheeler driver, Jeffrey Dyke, who averred that "Alford suddenly and unexpectedly crossed the

11

center line and collided head-on with the front of the tractor-trailer that [Dyke] was operating fully within [his] lane of travel." (Jeffrey Dyke Affidavit; Defs. Opp. Memo., Exh. 2 [doc. # 16-2]). Dyke explained that "[d]ue to the suddenness of Mr. Alford's movement into [his] lane of travel, [Dyke] was unable to take evasive maneuvers to avoid the collision." *Id*. Dyke did not observe any visibility impairments or obstructions. *Id*.

Removing Defendants argue that Plaintiffs are unable to establish that the alleged encroachments to the right of way identified by Plaintiffs' expert, Matthew Jackson, were a cause-in-fact of the accident. "Cause-in-fact usually is a 'but for' inquiry which tests whether the accident would or would not have happened but for the defendant's substandard conduct. *Boykin v. Louisiana Transit Co., Inc.*, 707 So.2d 1225, 1230 (La. 1998) (citation omitted). However, when there are concurrent causes of an accident, the proper inquiry is whether the conduct at issue was a substantial factor in bringing about the accident. *Id*. at n.10.

Upon consideration of the present record, the court finds that Plaintiffs have submitted evidence to show that the encroachments to the right of way would have been "relevant" to Alford's ability to "appreciate" the oncoming 18-wheeler approximately four seconds prior to impact. (Jackson Affidavit). Furthermore, just prior to the accident, Alford was in the process of returning to his proper lane of travel. *Id*. Indeed, the accident report showed Alford's vehicle pointed at an acute angle towards his lane of travel, which potentially indicates that he was trying to return to his lane. *Id*. But for the several encroachments to the highway's right of way that the DOTD apparently acquiesced to,[5] Alford might have seen the oncoming tractor trailer seconds sooner, thereby permitting him to complete his lane change and avoiding the collision.

---

[5] The photos do not suggest that the structures were of such recent vintage that the DOTD could not have known of them and/or did not have sufficient opportunity to address.

At this early stage of the proceedings, the court cannot rule out this reasonable possibility.[6]

Removing Defendants urge the court to follow this court's decision in *Guillory v. Starr Indemnity & Liability Co.*, where Magistrate Judge Hayes and Judge Doughty found that a defect in the road was not a cause-in-fact of plaintiffs' accident. *Guillory v. Starr Indem. & Liab. Co.*, Civ. Action No. 18-1634, 2019 WL 1447510, at *5 (W.D. La. Mar. 18, 2019), *R&R adopted,* (W.D. La. Apr. 1, 2019). In *Guillory*, however, dash camera footage confirmed that the tractor trailer did not slow or stop as it crossed the intersection, and, thus, the poor state of the road surface was not a cause-in-fact of the trailer's alleged failure to timely clear the intersection. *Id*. Such conclusive evidence is not present here. Rather, the court is faced with opinions from conflicting accident reconstructionists, which the court is obliged to reconcile in favor of Plaintiffs – at least in the present context of an improper joinder analysis.

Recognizing the undersigned's necessary resolution of the conflicting evidence for purposes of this motion, Defendants exhort the court to disregard the affidavit of Matthew Jackson, in its entirety, and more particularly, with regard to paragraphs 9 and 10. (Defs. Opp. Memo., pgs. 16-18). However, the court primarily has relied on paragraphs 4-5 of Jackson's affidavit, and removing Defendants have not established that these portions of the affidavit are completely unsupported, unworthy of credence, or otherwise premised upon erroneous facts.

In short, the court finds that removing Defendants have failed to establish that Plaintiffs have no reasonable possibility of recovery against the DOTD. The court does not, however, express an opinion on the ultimate merits of the claims asserted against the DOTD, or to even suggest that a Louisiana court will find that as a matter of law, and fact, that the State is liable.

---

[6] "A district court need not and should not conduct a full scale evidentiary hearing on questions of fact affecting the ultimate issues of substantive liability in a case in order to make a preliminary determination as to the existence of subject matter jurisdiction." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir.1981).

Rather, the undersigned merely relies upon the oft-cited principle that where the removing parties ground their allegations of improper joinder upon a theory that plaintiffs cannot recover from a diversity-destroying defendant, this court is obliged to "resolve all disputed questions of fact in favor of the plaintiff and then determine whether there could possibly be a valid cause of action set forth under state law." *B., Inc.*, 663 F.2d at 551.

Doing so here, the court finds that removing Defendants have not precluded the reasonable possibility that the DOTD could be subject to liability under state law. The State's continued presence in the suit destroys diversity jurisdiction, and, thus, subject matter jurisdiction is lacking. Remand is required. 28 U.S.C. § 1447(c).

## II. Costs, Fees, and/or Expenses

Plaintiffs also seek an award of costs, attorney's fees, and/or expenses stemming from Defendants' alleged improvident removal. An order remanding a case to state court may require payment of "just costs and any actual expenses, including attorney fees," that were incurred as a result of removal. 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.* 546 U.S. 132, 141, 126 S.Ct. 704, 711 (2005).

Upon consideration, the court finds that removing Defendants had an objectively reasonable basis for seeking removal and the exercise of diversity jurisdiction in this case. They also supported their removal with evidence from multiple reconstructionists and affidavits. While Plaintiffs were obliged to retain an accident reconstructionist to secure remand, they needed this evidence to support their claim against the DOTD, in any event. Accordingly, the court does not find that an award of costs, fees, and/or expenses under 28 U.S.C. § 1447(c) is available or warranted.

**III.     DOTD's Motion to Dismiss**

The DOTD's motion seeks dismissal for lack of subject matter jurisdiction on the basis of sovereign immunity and for insufficient service of process. However, the Fifth Circuit has recognized that, as long as a non-diverse party "remains joined, the only issue the court may consider is that of jurisdiction itself." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016). Furthermore, Eleventh Amendment immunity cannot be used as a basis to bootstrap the removal of an otherwise non-diverse case to federal court. *See D & J Investments of Cenla LLC v. Baker Hughes A GE Co., LLC*, Civ. Action No. 20-1174, 2020 WL 8225685, at *2 (W.D. La. Nov. 18, 2020) (citing *Melder v. Allstate Corporation*, 404 F.3d 328 (5th Cir. 2005)).[7]

In light of the undersigned's determination that Plaintiffs did not improperly join the DOTD/State, the court lacks jurisdiction to consider the DOTD's Eleventh Amendment argument. In any event, remand to state court, as recommended here, will ameliorate and redress the State's objection to having Plaintiffs' claims against it adjudicated in federal court.

With regard to the DOTD's insufficient service of process argument, the court observes that a "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2013). "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990). A district court "enjoys broad discretion in determining whether to dismiss an action for

---

[7] In *Melder*, the Fifth Circuit explained that as part of its improper joinder analysis for purposes of a claim against a state agency, the court does "*not* consider the Eleventh Amendment or questions of jurisdiction that do *not* bear on whether a claim can be established *under state law* against [the state agency]." *Melder, supra*.

ineffective service of process." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986).

In this case, even if the court were to assume (without so deciding) that Plaintiffs failed to properly serve the DOTD, the remedy for insufficient service of process is to quash service and permit plaintiffs to re-serve defendant. *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F. Supp. 2d 746, 750 (W.D. La. 2000) (citation omitted). Indeed, dismissal under Rule 12(b)(5) "is not appropriate where there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." *Cockerham v. Rose*, Civ. Action No. 11-0277, 2011 WL 1515159, at *1 (N.D. Tex. Apr. 18, 2011) (citations and internal quotation marks omitted). Here, Plaintiffs have taken steps to serve the DOTD, and there is every reason believe that they will succeed in redressing the alleged deficiency(ies). Therefore, the court finds good cause to extend the period for Plaintiffs to properly serve the DOTD, which they may perfect upon remand. *See* Fed.R.Civ.P. 4(m) (upon good cause shown, the court must extend the time for service).[8]

Finally, Plaintiffs requested an award of $3,375.00 in fees against the State for its alleged collusive role in the unsuccessful removal. However, the court has determined that costs, fees, and expenses are not available or warranted under 28 U.S.C. § 1447 in this case. *See* discussion, *supra*. Furthermore, insofar as Plaintiffs intended to seek sanctions under Rule 11, it is manifest that a demand for Rule 11 sanctions must be filed via separate motion. Fed.R.Civ.P. 11(c)(2). The instant request fails to conform with the foregoing procedural requirement and may be

---

[8] To the extent that the State raised Plaintiffs' insufficient service attempts as an additional basis to establish improper joinder, the court observes that the fact that a defendant was not served does not mean that its citizenship may be ignored. *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir.1998). Rather, "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *Id.* (citations omitted). Thus, the sole inquiry, at least for purposes of subject matter jurisdiction, is whether the State was properly joined, which the court has answered in the affirmative. *See* discussion, *supra*.

denied on that basis. *Rouege Trucking, LLC v. Canales*, No. 14-304, 2015 WL 127870, at *9 (M.D. La. Jan. 7, 2015) (citations omitted).[9]

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to remand [doc. # 11] filed by Plaintiffs Sarah Marie Sharp Alford, et al., be GRANTED, and that the matter be remanded to the Third Judicial District Court for the Parish of Union, State of Louisiana. 28 U.S.C. § 1447(c).

IT IS FURTHER RECOMMENDED that the associated request for costs, fees, and/or expenses be DENIED.

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 3] filed by Defendant, State of Louisiana, through the Department of Transportation and Development, be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[9]The court would note that the State's filing of a motion to dismiss in a removed case where the removing defendants contend that the State was improperly joined provides little, if any, value to the analysis. The State's arguments do not buttress the improper joinder argument. Even if the court finds that the State was improperly joined, then the plaintiff's claims against the State will be dismissed, without prejudice. *See, e.g., Guillory, supra*.

17

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 10th day of May, 2021.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE